IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 4, 2003

## NADIA COFFER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-25216     Arthur T. Bennett, Judge**

_____

**No. W2003-00529-CCA-R3-PC  - Filed November 18, 2003**

_____

The petitioner, Nadia Coffer, appeals the lower court's denial of her post-conviction relief petition. The petitioner originally entered guilty pleas in the Shelby County Criminal Court to especially aggravated kidnapping and attempted first degree murder and received two concurrent fifteen-year sentences, the minimum sentences for these Class A felonies. On appeal, the petitioner contends her pleas were unknowingly and involuntarily entered due to ineffective assistance of counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Joshua B. Spickler, Memphis, Tennessee, for the appellant, Nadia Coffer.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; and Lee V. Coffee, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This is yet another Gangster Disciple case. The petitioner pled guilty to attempted first degree murder and especially aggravated kidnapping, Class A felonies, and received concurrent fifteen-year sentences for each conviction. *See* Tenn. Code Ann. §§ 39-11-117(a)(2) (attempted first degree murder), 39-13-305(b)(1) (especially aggravated kidnapping). The petitioner was sentenced as a violent offender for the especially aggravated kidnapping conviction requiring service of 100% of her sentence, *see id.* § 40-35-501(i)(1), (2)(C), and as a Range I standard offender for the attempted first degree murder conviction requiring service of 30% of her sentence before being eligible for release, *see id.* § 40-35-501(c).

# I. POST-CONVICTION PROCEEDINGS

At the time the offenses were committed, the petitioner held the rank of Governor, which was the highest-ranking female over the Gangster Disciples in Memphis. The petitioner was indicted with two co-defendants, all of whom were members of the Gangster Disciples. According to the charges, the victim was taken from her residence to Rose Hill Cemetery where she was shot six times, yet survived. The petitioner maintained she did not commit these acts nor order that these acts be committed. At the post-conviction hearing, she testified she informed defense counsel that she was innocent of the especially aggravated kidnapping charge. She further stated defense counsel never reviewed with her the concept of criminal responsibility for the conduct of another.

Defense counsel was retained by the petitioner's family and represented her for approximately twenty months from the time she was indicted until she entered the guilty pleas on December 5, 2000. The petitioner testified defense counsel held four or five meetings with her during this twenty-month period. Upon requesting a copy of the evidence relating to her case, defense counsel sent her a copy of the discovery materials received from the state and told her that he had no additional evidence. The discovery materials consisted of police reports, crime scene reports, and statements from witnesses. The petitioner conceded defense counsel reviewed the discovery materials with her.

The petitioner testified she requested defense counsel interview twenty-five to thirty witnesses who were listed in the discovery materials. She explained that Nilda Hale, a co-defendant who had given a statement to the police, was not present when the offenses occurred, and Hale's statement did not coincide with other discovery materials. Although defense counsel interviewed Hale, the petitioner did not know whether he interviewed the other witnesses. Although the petitioner did not recall the names of the witnesses whom she wanted defense counsel to interview, she stated these witnesses would have testified that she did not participate in the commission of the offenses nor order the offenses be committed. The petitioner testified six of these witnesses were with her on the day in which the offenses occurred. She stated that although she did not reveal this information to defense counsel, she instructed him to interview these witnesses.

The petitioner stated defense counsel informed her that if convicted at trial, she could receive a maximum sentence of twenty-five years on each count, and the trial court could order the sentences to be served consecutively, resulting in an effective fifty-year sentence. She informed defense counsel that she still wished to go to trial. The petitioner testified defense counsel did not explain the possibility of a conviction for a lesser-included offense and never presented a plea offer for a lesser offense to her.

The trial was set on December 5, 2000, the day in which the petitioner entered the pleas. On the evening of December 4th, defense counsel and an attorney from his office met with the petitioner and presented the plea offer of fifteen years. The petitioner testified defense counsel told her that "they had nothing to go to trial with." The petitioner stated that when she told defense counsel that she still wanted to go to trial and would appeal if convicted, defense counsel stated no grounds for

appeal would exist. The petitioner entered the pleas the following day. She stated she entered the pleas as a result of the meeting and due to defense counsel's failure to investigate her case.

The petitioner conceded that during the plea hearing, she informed the trial judge that she and defense counsel thoroughly discussed her case; defense counsel investigated her case and performed legal research; she was satisfied with defense counsel's representation; she was not pressured into entering the pleas; she was aware of her right to a jury trial and her right to assistance of counsel; and she did not want a jury trial. The petitioner further conceded defense counsel did not instruct her or force her to plead guilty, but instead, merely informed her of her options.

Defense counsel testified he filed approximately ten pretrial motions on the petitioner's behalf, including a motion for discovery, a motion to sever the defendants, and a motion to suppress. He stated the petitioner did not request that any additional motions be filed. Defense counsel stated either he or an attorney from his office conducted four meetings with the petitioner and spoke to her over the telephone on numerous occasions. In addition, defense counsel met with the petitioner at the courthouse during thirteen court proceedings involving her case.

The petitioner was provided with a copy of the discovery materials, and defense counsel discussed them with her. The discovery materials included a police probable cause statement and a statement by co-defendant Hale. According to Hale's statement, due to a problem between the petitioner and the victim, co-defendant Marquez Winters broke into the victim's apartment, and the petitioner drove the victim and the co-defendants to a cemetery where Winters shot her. Winters had also given an oral statement in which he maintained all of the defendants were present when the offenses occurred and identified the petitioner as the shooter.

Defense counsel discussed with the petitioner the possibility of entering a plea to a lesser charge. The petitioner was charged with two Class A felonies, one of which was a violent offense requiring service of 100% of the sentence. Defense counsel opined that based upon the circumstances of the offenses, if the petitioner were convicted at trial, the trial judge would impose the maximum twenty-five-year sentence for each conviction and order the sentences to run consecutively. In exchange for the petitioner's testimony against co-defendant Winters, the state agreed to allow the petitioner to enter guilty pleas to facilitation as Class B felonies with a fifteen-year sentence as a Range II offender at 35%. However, the petitioner declined to accept the plea offer.

Defense counsel did not recall the petitioner's providing him with a list of witnesses to interview or discussing potential alibi witnesses with him. He stated that had the petitioner provided him with a list of witnesses, he would have subpoenaed them. In preparing for trial, defense counsel issued subpoenas for two police officers and co-defendant Hale. He planned to use the police officers to bring out certain items from the police report and Hale to bring out a prior inconsistent statement which she had given.

Defense counsel testified he did not recall discouraging the petitioner from going to trial or telling her that he had "nothing"; rather, he was prepared to try her case on December 5th. Defense counsel stated that on the evening prior to trial, he and the petitioner discussed the facts of her case as he expected the state to present them at trial. He explained to the petitioner that the state planned to present the testimony of the victim, the medical examiner, numerous police officers, and "T. Money," a Gangster Disciple who aided the petitioner in leaving town following the shooting.

Defense counsel discussed with the petitioner the concept of criminal responsibility for the conduct of another and the state's theory that the petitioner ordered the co-defendants to commit the offenses. Defense counsel opined that the risk of conviction at trial was "sizeable" due to the petitioner's rank and authority in the Gangster Disciples. He and the petitioner thoroughly discussed her options. Although the petitioner disputed one of the charges, the possible sentence for the other charge was greater than the effective fifteen-year sentence which the petitioner received pursuant to the plea agreement. Defense counsel did not recall the petitioner's expressing dissatisfaction with his representation and stated he did not force her to enter the pleas.

## II. POST-CONVICTION COURT'S FINDINGS

At the conclusion of the post-conviction hearing, the court made oral findings and subsequently filed written findings denying the petitioner relief. It accredited the testimony of trial counsel and found that the petitioner knowingly and voluntarily entered the guilty pleas and that trial counsel was not deficient in his representation. The court noted that during the plea hearing, the trial court informed the petitioner of her rights and the consequences of entering the guilty pleas. The post-conviction court further noted that at the post-conviction relief hearing, the petitioner admitted she freely and voluntarily entered the pleas and that defense counsel did not instruct her or force her to enter the pleas. The court observed that the petitioner was offered a lesser sentence in exchange for her testimony against a co-defendant, but declined the offer. Finally, the post-conviction court found that prior to entering the pleas, the petitioner never informed the trial court that she wanted a jury trial, and the petitioner ultimately pled guilty "in order to avoid the possibility of receiving a greater sentence by a jury."

## III. ABSENCE OF GUILTY PLEA TRANSCRIPT

The petitioner contends her guilty pleas were unknowingly and involuntarily entered due to ineffective assistance of counsel. However, the petitioner failed to include the transcript of the guilty plea hearing in the record before this court. We conclude the transcript of this proceeding is essential to our examination of these issues. It is the duty of the accused to provide a record which conveys a fair, accurate, and complete account of what transpired regarding the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see* State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999). Therefore, these issues would ordinarily be waived for failure to include the guilty plea transcript in the appellate record. Regardless of waiver, we conclude the petitioner's issues are without merit.

## IV. STANDARD OF REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997); Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends she received ineffective assistance of counsel in entering her guilty pleas. Specifically, she maintains defense counsel was ineffective in failing to adequately investigate her case and interview witnesses. We disagree.

### A. Ineffective Assistance of Counsel, Generally

For a petitioner to successfully overturn a conviction based on ineffective assistance of counsel, the petitioner must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, the petitioner must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). As to guilty pleas, the petitioner must establish that, but for counsel's errors, petitioner would not have entered the plea and would have insisted on going to trial. *See* Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his [or her] defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); *see also* Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Black, 794 S.W.2d at 757. Neither the trial court nor this court can speculate on what a witness's testimony might have been if introduced by counsel. *Id.*

**B. Analysis**

We note that although the petitioner contends defense counsel failed to interview witnesses, no potential witnesses testified during the post-conviction relief hearing. Furthermore, during the hearing, the petitioner was unable to specifically identify the witnesses whom she claimed defense counsel failed to interview. Thus, the petitioner has filed to establish prejudice. Moreover, the post-conviction court found that defense counsel was in no way deficient and "did all he could do based on the circumstances and the facts he had before him. . . ." Defense counsel interviewed and subpoenaed witnesses, met the petitioner on several occasions, filed numerous pretrial motions, and thoroughly discussed all matters with the petitioner. Therefore, the petitioner failed to establish defense counsel was deficient and that any alleged deficiency resulted in prejudice. This issue is without merit.

## VI. VOLUNTARINESS OF GUILTY PLEA

The petitioner next contends her guilty pleas were unknowingly and involuntarily entered. We disagree.

In examining the voluntariness of a guilty plea, our supreme court has stated the following:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. *Id.* at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279.

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In determining the voluntary and knowing nature of a guilty plea, the appellate court must examine all relevant circumstances which existed when the plea was entered. Brady v. United States, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In concluding the guilty pleas were knowingly and voluntarily entered, the post-conviction court found that during the plea hearing, the trial court informed the petitioner of her rights and the consequences of entering the pleas. During the post-conviction relief hearing, the petitioner testified she voluntarily entered the pleas and that defense counsel did not instruct her or coerce her into entering the pleas. The post-conviction court found the petitioner entered the pleas in order to avoid the possibility of receiving a greater sentence if convicted at trial. Pleading guilty to avoid the possibility of being subjected to a higher punishment does not render a plea involuntary. Brady, 397 U.S. at 751. We conclude the evidence does not preponderate against the findings of the post-conviction court. The plea was knowingly and voluntarily entered.

## CONCLUSION

Based upon our review of the record and the applicable law, we affirm the judgment of the post-conviction court.

_____
JOE G. RILEY, JUDGE